Present: All the Justices

KATRINA Q. PLUMMER

OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.   Record No. 952306        September 13, 1996

CENTER PSYCHIATRISTS, LTD.

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
E. Preston Grissom, Judge


The sole issue we consider in this appeal is whether the trial court erred by holding, as a matter of law, that a psychologist who had sexual intercourse with a patient was acting outside the scope of his employment, thus rendering the doctrine of respondeat superior inapplicable.

Because this case was decided on demurrer, we will state the facts "in accordance with well-established principles that a demurrer admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts." Cox Cable Hampton Roads v. City of Norfolk, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991).

Dr. Roque Gerald, a licensed clinical psychologist, was employed by the defendant, Center Psychiatrists, Ltd. Gerald provided therapy and counseling services to the plaintiff, Katrina Q. Plummer, who was suffering from depression. Gerald was "cognizant of [the] [p]laintiff's psychological and emotional history, which included her prior attempts at suicide," and he knew "that she was suffering from suicide ideation, and depression."

On February 8, 1989, while the plaintiff was receiving

counseling from Gerald at the defendant's place of business, Gerald committed "an act of sexual intercourse upon [p]laintiff [which] constituted an assault and battery upon her since, Dr. Roque Gerald, through his education, experience and knowledge of [p]laintiff overcame her will so that she was unable to act with volition."

The plaintiff filed her motion for judgment against the defendant seeking to recover, inter alia, damages caused by the assault and battery.  The plaintiff alleged that Gerald was an employee, agent, and servant of the defendant and that he was acting within the scope of his employment when he engaged in sexual intercourse with her.

The defendant filed a demurrer to the plaintiff's motion for judgment asserting, among other things, that as a matter of law, it cannot be liable to the plaintiff because Gerald was not acting in the course of his employment when he committed the act of sexual intercourse and, therefore, the doctrine of respondeat superior is not applicable.  The trial court granted the defendant's demurrer.  We awarded the plaintiff an appeal.

The plaintiff argues that the trial court erred by dismissing her claim for assault and battery against the defendant because she pled sufficient facts in her motion for judgment which, if proven at trial, would create a jury issue on the question whether Gerald was acting within the course of his employment when he committed an act of sexual intercourse upon her.  The defendant argues that, as a matter of law, Gerald was not acting within the scope of his employment, but "solely for

his own personal interests."  We disagree with the defendant.

Initially, we observe that pursuant to the doctrine of respondeat superior, an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed.  Kensington Associates v. West, 234 Va. 430, 432, 362 S.E.2d 900, 901 (1987); McNeill v. Spindler, 191 Va. 685, 694, 62 S.E.2d 13, 17 (1950).  Additionally, "[w]hen an employer-employee relationship has been established, 'the burden is on the [employer] to prove that the [employee] was not acting within the scope of his employment when he committed the act complained of, and . . . if the evidence leaves the question in doubt it becomes an issue to be determined by the jury.'" Kensington Associates, 234 Va. at 432-33, 362 S.E.2d at 901 (quoting Broaddus v. Standard Drug Co., 211 Va. 645, 653-54, 179 S.E.2d 497, 504 (1971)).

We recently discussed the principles which are dispositive of this dispute in Commercial Business Systems v. BellSouth, 249 Va. 39, 453 S.E.2d 261 (1995).  BellSouth awarded Commercial Business Systems a contract to repair certain equipment manufactured by Digital Equipment Corporation.  William Jordan, a BellSouth employee, had negotiated and administered the contract with Commercial Business Systems.

Jerry H. Waldrop, another BellSouth employee, replaced Jordan as the contract negotiator and administrator. Subsequently, Waldrop made false statements about Commercial Business Systems' financial status and its performance under the

contract.  Waldrop also informed Commercial Business Systems that
the contract would not be renewed, and he awarded another company
the contract.  We observed that the record in <u>Commercial Business
Systems</u>

> "clearly established that Waldrop committed serious
> violations of BellSouth's conflict-of-interest rules.
> Waldrop established his own company, called EntraCom
> Corporation, as a means to conduct business with
> Halifax and other companies that provided services to
> BellSouth, and he accepted bribes from Halifax in the
> form of 'kickbacks' on transactions between Halifax and
> EntraCom."

<u>Id.</u> at 43, 453 S.E.2d at 265.

In <u>Commercial Business Systems</u>, we noted that "[i]n
determining whether an agent's tortious act is imputed to the
principal, the doctrine's primary focus is on whether the
activity that gave rise to the tortious act was within or without
the agent's scope of employment."  <u>Id.</u> at 44, 453 S.E.2d at 265.

We also stated the test that we believe is applicable here:

> "The courts . . . have long since departed from the
> rule of non-liability of an employer for wilful or
> malicious acts of his employee.  Under the modern view,
> the wilfulness or wrongful motive which moves an
> employee to commit an act which causes injury to a
> third person does not of itself excuse the employer's
> liability therefor.  The test of liability is not the
> motive of the employee in committing the act complained
> of, but whether that act was within the scope of the
> duties of employment and in the execution of the
> service for which he was engaged."

<u>Id.</u> at 45, 453 S.E.2d at 266 (quoting <u>Tri-State Coach Corp.</u> v.
<u>Walsh</u>, 188 Va. 299, 305-06, 49 S.E.2d 363, 366 (1948)).

Applying this test in <u>Commercial Business Systems</u>, we
observed:

> "Unquestionably, Waldrop's conduct was outrageous and
> violative of his employer's rules.  His motive was
> personal -- to advance his self-interest, rather than

the interest of BellSouth.  And yet, Waldrop's willful and malicious acts were committed while Waldrop was performing his duties as BellSouth's contract negotiator and administrator and in the execution of the services for which he was employed.

We hold, therefore, that the evidence presents a jury issue whether Waldrop acted within the scope of his employment when he committed the wrongful acts."

Commercial Business Systems, 249 Va. at 46, 453 S.E.2d at 266.

We are of opinion that, here, the facts alleged in the motion for judgment are sufficient to support the plaintiff's legal conclusion that Gerald acted within the scope of his employment when he committed the wrongful acts against the plaintiff.  According to the plaintiff's allegations, Gerald's act was committed while he was performing his duties as a psychologist in the execution of the services for which he was employed, in this instance, counseling and therapy. Additionally, Gerald's education, experience, and knowledge of the plaintiff, who was depressed and had suicidal ideations, enabled him "[to overcome] her will so that she was unable to act with volition."  Furthermore, at this stage of the proceedings, there simply are not sufficient facts which would permit us to hold, as a matter of law, that the defendant has met its burden of showing that its employee was not acting within the scope of his employment.  See Broaddus, supra, 211 Va. at 653-54, 179 S.E.2d at 504.

The defendant asserts that our recent decision in Tomlin v. McKenzie, 251 Va. 478, 468 S.E.2d 882 (1996), supports his contention that Gerald's acts, as a matter of law, were outside the scope of his employment.  We disagree.   In Tomlin, the

plaintiffs filed their motion for judgment against Patsye D. McKenzie, a licensed clinical social worker, and her employer, a professional corporation owned solely by McKenzie.  The motion for judgment alleged that McKenzie provided family therapy to the plaintiffs pursuant to an order of referral by the Juvenile & Domestic Relations District Court of the City of Chesapeake.  The motion for judgment further alleged that in the course of providing that therapy, McKenzie and her employer intentionally and maliciously committed certain acts constituting malpractice and defamation.

The defendants filed a plea in bar, seeking dismissal of the action on the basis that McKenzie and her employer were entitled to common law and statutory immunity.  McKenzie and her employer asserted that common law sovereign immunity protected them from civil suits for actions performed in McKenzie's capacity as a court-appointed officer.  We reversed the judgment of the trial court which had sustained their motions because McKenzie's conduct was outside the scope of the court-ordered referral.

Tomlin is not implicated here.  McKenzie's employer did not claim that she was acting outside the scope of her employment when she committed the allegedly tortious acts.  Rather, we reviewed the facts pled in the plaintiffs' motion for judgment, considered her specific factual allegations, applied the principles relevant to the doctrine of sovereign immunity, and held that the intentional torts alleged were outside the scope of McKenzie's court-appointed role.  Here, however, we do not concern ourselves with sovereign immunity, but with the doctrine

of <u>respondeat</u> <u>superior</u>.  Our review of the facts and reasonable inferences therefrom alleged in the plaintiff's motion for judgment compels us to conclude that she has pled sufficient facts which, if proven, would create a jury issue whether Gerald was acting within the scope of his employment.

Accordingly, we will reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.

JUSTICE KOONTZ, with whom CHIEF JUSTICE CARRICO and JUSTICE COMPTON join, dissenting.

I respectfully dissent.

In my view, the trial court correctly determined that the facts alleged and those impliedly alleged in Katrina Q. Plummer's motion for judgment are insufficient, as a matter of law, to support her legal conclusion that Dr. Roque Gerald, her psychologist, acted within the scope of his employment with Center Psychiatrists, Ltd. when he "seduced [her] into an act of sexual intercourse."  Accordingly, I disagree with the majority's conclusion that Plummer's allegations present a jury issue and that <u>Commercial Business Systems v. BellSouth</u>, 249 Va. 39, 453 S.E.2d 261 (1995), is dispositive of this appeal.

Surely it is undisputed that sexual intimacy between professional counselors and their clients is unethical, has no place in the therapy process, and is universally condemned.  <u>See</u>, <u>e.g.</u>, American Psychological Association, Standard 4.05 (1992)("Psychologists do not engage in sexual intimacies with

current patients or clients").  Although we have not previously addressed a case involving a sexual assault by a counselor in violation of these accepted standards to determine the liability of the counselor's employer under the doctrine of <u>respondeat superior</u>, I agree with the majority that the critical issue becomes whether the employee was acting within the scope of his employment when he committed the tortious act.

Our cases have made it clear that the employer is not a surety for the conduct of the employee.  Rather, we have said

> "[An employer] is not liable for every wrong which [an employee] may commit during the continuance of an employment. . . . If the [employee] steps aside from his [employer's] business and is engaged in an independent venture of his own, the relation of [employer] and [employee] is for the time suspended. The test is whether the act complained of was done in the course of the [employee's] employment, or outside of it."

<u>Abernathy v. Romaczyk</u>, 202 Va. 328, 332, 117 S.E.2d 88, 91 (1960)(quoting <u>McNeill v. Spindler</u>, 191 Va. 685, 694-95, 62 S.E.2d 13, 18 (1950)).

In <u>Tri-State Coach Corp. v. Walsh</u>, 188 Va. 299, 49 S.E.2d 363 (1948), we noted that: "the exact line of demarcation between what acts are within the scope of employment and what are not is, at times, difficult of ascertainment.  The inferences to be drawn from the facts proved are often within the province of the jury." <u>Id.</u> at 308, 49 S.E.2d at 367.  In <u>Kensington Associates v. West</u>, 234 Va. 430, 362 S.E.2d 900 (1987), we further explained:

> when the undisputed evidence shows that an employee's deviation from his employer's business is slight and not unusual, or, on the other hand, great and unusual, a court shall determine, as a matter of law, whether the employee was acting in the scope of his employment. When, however, the evidence places the case between

these two extremes, the issue is for a jury.

Id. at 433, 362 S.E.2d at 902.

Assuming that all the allegations in Plummer's motion for judgment are true, they clearly establish that Dr. Gerald's "seduction" of Plummer was not an act intended by him to advance or maintain his employer's business.  It is equally clear that in undertaking that seduction, Dr. Gerald must have stepped aside from the business of Center Psychiatrists, Ltd. and that he engaged in an independent venture of his own.  Under such circumstances, and as we held in Kensington Associates, a jury issue was not presented and the trial court correctly determined that Dr. Gerald's act was a "great and unusual" deviation from his employer's business and, thus, not committed within the scope of his employment as a matter of law.

Our decision in Commercial Business Systems does not dictate a contrary conclusion.  There the tortious act of the employee was committed while the employee was performing the duties of his employment and in the execution of the services for which he was employed.  Thus, we held that the facts presented a jury issue whether he acted within the scope of his employment when he committed the wrongful acts.  In the present case, the deviation from the employer's business is so extreme that no jury issue is implicated.

In short, while the limits of the scope of employment in a given case may be sufficiently broad to include various willful and malicious acts of the employee, a sexual assault upon a client by a professional counselor or psychologist falls well

beyond that scope as a matter of law.

Finally, I am compelled to relate that the majority of our sister jurisdictions are in accord with the view I would take of this appeal.  See, e.g., P.S. and R.S. v. Psychiatric Coverage, Ltd., 887 S.W.2d 622, 625 (Mo. Ct. App. 1994)(adopting majority view and citing exemplar decisions, Id. at n.4); Sharples v. State, 793 P.2d 175, 176-77 (Haw. 1990)(respondeat superior does not apply even though counselor maintained sexual intercourse "was part of his therapy," Id. at 176 n.1).  See generally Russell G. Donaldson, Annotation, Liability of Hospital or Clinic for Sexual Relationships with Patients by Staff Physicians, Psychologists, and Other Healers, 45 A.L.R.4th 289 (1986).

For these reasons, I would affirm the judgment of the trial court.