**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1024**

GWENNETTA PRATT-MILLER; CURTIS DAWKINS,

      Plaintiffs - Appellants,

       v.

SHERIFF BETH ARTHUR,

      Defendant - Appellee,

       and

COUNTY OF ARLINGTON VIRGINIA; CRAIG PATTERSON, individually and in his Official Capacity; ARLINGTON COUNTY SHERIFF'S OFFICE,

      Defendants.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:15-cv-00666-LMB-JFA)

Submitted: May 30, 2017                       Decided: July 3, 2017

Before GREGORY, Chief Judge, and AGEE and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Sidney Schupak, LAW OFFICES OF SIDNEY SCHUPAK, LLC, Gaithersburg, Maryland, for Appellant. Alexander Francuzenko, Broderick C. Dunn, Philip C. Krone,

COOK CRAIG & FRANCUZENKO, PLLC, Fairfax, Virginia, for Appellee.

––––––––––––––––

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Appellants, Gwenetta Pratt-Miller and Curtis Dawkins, filed a complaint against the Arlington County Sheriff Beth Arthur and former Deputy Sheriff Craig Patterson, based on Patterson's conduct in attempting to arrest and fatally shooting the Appellants' son. The amended complaint asserted claims pursuant to 42 U.S.C. § 1983 (2012) against Arthur and Patterson in their individual and official capacities and several claims under state law. The district court initially dismissed the § 1983 claims against Arthur in her official capacity, and, after allowing limited discovery, granted summary judgment in favor of Arthur on the remaining claims against her; the Appellants challenge both these orders on appeal.[*] For the following reasons, we affirm.

The Appellants first challenge the district court's order dismissing their § 1983 claims against Arthur in her official capacity, arguing that Arthur was not entitled to Eleventh Amendment immunity for those claims. However, at the hearing on Arthur's motion to dismiss the complaint, the Appellants explicitly stated that those claims should be dismissed. The Appellants cannot challenge an action taken by the district court based on their invitation to take the action. *See United States v. Jackson*, 124 F.3d 607, 617 (4th Cir. 1997) ("The invited error doctrine recognizes that a court cannot be asked by

---

[*] Although the claims against Patterson are still pending in the district court, the district court certified that the orders involved controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the orders may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b) (2012); Fed. R. Civ. P. 54(b). Based on that certification, we granted the Appellants' petition for appeal. *See* 28 U.S.C. § 1292(b); Fed. R. App. P. 5.

3

counsel to take a step in a case and later be convicted of error, because it has complied with such request." (internal quotation marks omitted)).

The Appellants also challenge the district court's order granting summary judgment in favor of Arthur on their remaining claims, asserting that Arthur was liable under § 1983 based on municipal liability and supervisory liability, and liable for the state law claims based on respondeat superior. "Section 1983 provides that every person, who, under color of state law causes the violation of another's federal rights shall be liable to the party injured by his conduct." *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014) (internal quotation marks omitted). "Local governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where [] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A plaintiff can make such a showing by demonstrating (1) an express or written policy, (2) the decisions of a person with policymaking authority, (3) a failure to properly train officers demonstrating a deliberate indifference to citizens' rights, or (4) a practice that is so persistent it constitutes a custom or usage with the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

With respect to the issue of municipal liability, the Appellants contend that Arthur was the final policymaker for the Arlington County Sheriff's Office and that she failed to properly train her deputies. However, there is a distinction between § 1983 claims against a public official in her individual capacity and such claims against her in her

4

official capacity. "Personal-capacity suits seek to impose personal liability upon a government official for actions [she] takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (internal quotation marks omitted). For the former claims, a plaintiff must show that the official acting under color of state law caused the deprivation of a federal right; for the latter type of claim, however, a governmental entity is only liable if a policy or custom of that entity played a part in the violation of federal law. *Id.* at 166. A court may also hold a public official liable for the acts of her subordinates under § 1983 if the plaintiff demonstrates supervisory liability, which is based on a supervisor's indifference or tacit authorization of a subordinate's misconduct. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

With respect to the Appellants' assertion of municipal liability, the Appellants' contention that Arthur is a policymaker for the Arlington County Sheriff's Office "does not quite capture the relevant issue here." *Mikkelsen v. DeWitt*, 141 F. App'x 88, 90 (4th Cir. 2005) (No. 04-2151) (argued but unpublished). Whether a public entity has adopted an unconstitutional policy is relevant only when examining the basis for municipal liability under § 1983. *Id.* at 90-91. This is, however, "not the right question to ask when confronting a supervisor's potential liability in [her] individual capacity." *Id.* at 91. Rather, where the only remaining claims are against a public official in her individual capacity, to hold the official liable for her subordinate's conduct, that "conduct must meet the test for supervisory liability." *Id.* (internal quotation marks omitted). Here, as the

5

only remaining § 1983 claims pending against Arthur at the time the court granted summary judgment were against Arthur in her individual capacity, she could only be held liable for Patterson's conduct if that conduct met the test for supervisory liability.

> In order to establish supervisory liability under § 1983, a plaintiff must show

> (1) that the supervisor had actual or constructive knowledge that [her] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799 (internal quotation marks omitted). To satisfy the first element, a plaintiff must establish "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* To demonstrate that a risk is pervasive and unreasonable "requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* In addition, a "plaintiff assumes a heavy burden of proof in establishing deliberate indifference," and must demonstrate a supervisor's continued inaction in the face of documented and widespread abuses. *Id.* We have thoroughly reviewed the record and conclude that the district court did not err in granting summary judgment in favor of Arthur on the Appellants' § 1983 claims against her in her individual capacity.

6

The Appellants also challenge the district court's grant of summary judgment for Arthur on their state law claims. "[P]ursuant to the doctrine of *respondeat superior*, an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed." *Plummer v. Center Psychiatrists, Ltd.*, 476 S.E.2d 172, 173 (Va. 1996). After an employer-employee relationship has been established, the defendant bears the burden of demonstrating that the employee was not acting within the scope of his employment when he committed the act complained of, and any doubt based on the evidence must be resolved by a jury. *Id.* at 174.

> Generally, an act is within the scope of the employment if (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise wholly from some external, independent, and personal motive on the part of the employee to do the act upon his own account.

*Kensington Assocs. v. West*, 362 S.E.2d 900, 901 (Va. 1987) (internal quotation marks omitted). "[T]he issue is whether the service itself, in which the tortious act was done, was within the ordinary course of" the business. *Gina Chin & Assocs. v. First Union Bank*, 537 S.E.2d 573, 578 (Va. 2000) (internal quotation marks omitted). Our review of the record leads us to conclude that the district court did not err in finding that Arthur demonstrated that Patterson was not acting within the scope of his employment when the act complained of took place.

7

Finally, the Appellants assert that the district court abused its discretion in allowing only limited discovery prior to granting summary judgment for Arthur. We review for abuse of discretion the district court's refusal to allow a party an opportunity to engage in further discovery prior to the entry of summary judgment. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Based on our review of the record and the relevant legal authorities, we discern no abuse of discretion in the district court's actions.

Accordingly, we affirm the district court's orders. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process.

*AFFIRMED*